

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-31-2005

# Smalis v. Atty Gen PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1007

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Smalis v. Atty Gen PA" (2005). *2005 Decisions.* Paper 309.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/309

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 05-1007

———————

ERNEST SMALIS,
Appellant

v.

GERALD J. PAPPERT*, Attorney General,
Commonwealth of Pennsylvania;
DONALD KELCHNER, Superintendent,
State Correctional Institution at Camp Hill, Pennsylvania

(*Amended per Order dated 1/5/05)

———————

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 03-cv-01351)
District Judge:  Hon. Joy F. Conti

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 19, 2005

BEFORE:  SMITH, STAPLETON and NYGAARD, Circuit Judges

(Opinion Filed: October 31, 2005)

———————

STAPLETON, Circuit Judge:

On December 16, 1999, Earnest Smalis entered a plea of *nolo contendere* to two counts of violating Pennsylvania's Solid Waste Management Act in the Court of Common Pleas in Allegheny County, Pennsylvania. In entering this plea, Smalis was represented by two attorneys – first by Sanford Middleman, "a veteran of more than forty years experience," and then by Mark Rush, "a former Assistant United States Attorney, and a partner in a major Pittsburgh law firm," who also represented Smalis in a separate federal proceeding. Br. Appellant at 5. In his habeas corpus petition, Smalis now seeks relief from his confinement because he claims his *nolo contendere* plea was entered due to ineffective assistance of counsel.

Smalis's plea agreement included the following provision:

> Earnest Smalis will be sentenced to a period of incarceration concurrent
> with that imposed by the district court Judge in any federal court proceeding
> where Mr. Smalis is to plead guilty.

Magistrate Rep., App. at A-5. This provision referred to a proceeding against Smalis in federal court on unrelated criminal fraud charges. After Smalis entered his plea, sentencing on his state charges was postponed until after the federal court determined his federal sentence.

2

After receiving a 43-month sentence in federal court, Smalis returned to the Court of Common Pleas to be sentenced for his state crimes. Rush asked the court to impose the minimum sentence under the state guidelines and, in support of that request, presented evidence of Smalis's cooperation with federal officials. The court, however, found that Smalis's "career of corruption" showed he was unlikely to change his behavior and sentenced him to a total of 10-20 years of imprisonment – 5-10 years for each state charge to run consecutive to one another, though concurrent with the federal sentence.

Smalis filed a motion to reduce his sentence or allow him to withdraw his plea. Represented by new counsel, Smalis claimed that the court had imposed a sentence that violated the plea agreement, which he believed not only guaranteed that the state sentence would run *concurrent* with the federal sentence, but that it would *not exceed* the federal sentence. Smalis claimed that he was advised by counsel that the word "concurrent" guaranteed that he would receive no more time on his state charges than he would receive on his federal charges. The trial court held an evidentiary hearing on Smalis's motion at which Smalis, Middleman, Rush, and Randy Tice, an FBI agent through whom Smalis had cooperated with the government, all testified as to this misunderstanding.

Middleman testified that he had thought he had an agreement with the prosecutor that Smalis would get no additional time for the state charges. When shown the written plea agreement, he testified:

> I'm not talking about interpretation. Let's just say my agreement was he
> would get no additional time, that was my agreement. If this says

3

something different, I'm incompetent and didn't write it up right.

Hearing Transcript, Docket #5, Tab E at 20. By contrast, Rush in his testimony continued to insist that the word "concurrent" meant "coextensive." For instance, he testified that "my belief at the time, and I still so advised Mr. Smalis, is that his state sentence would be concurrent. It would not exceed the sentence imposed by" the federal court. *Id.* at 26. Showing Rush a written copy of the plea agreement did not alter his position:

> Q:   Does it indicate anywhere in that plea agreement that there is a cap or a maximum sentence in that plea agreement?
> A:   Yes, it does.
> Q:   What's the paragraph?
> A:   Paragraph 2.
> Q:   What does it say?
> A:   It says "Ernest Smalis will be sentenced to a period of incarceration concurrent with that imposed by the District Court Judge in any Federal Court proceeding where Mr. Smalis is to plead guilty."
> Q:   Does that say anything about a maximum or minimum?
> A:   Yes, it does.
> Q:   What's the maximum?
> A:   It says, "Incarceration concurrent with that imposed by the District Court Judge," therefore, the maximum is the sentence imposed by the District Court Judge.

*Id.* at 31–32. Randy Tice recounted "many conversations" with Smalis prior to the sentence being handed down that led him to believe that:

> [Smalis's] understanding was that the use of the word concurrent by the parties involved, meant that it was a cap, not the way that, quite frankly, I would understand it and use it. . . . I told him that I thought it meant that it was not a cap, and he said that I was wrong and that he had had conversations with his attorneys, both of them, and they had told him that it meant it was a cap.

*Id.* at 74. The prosecution did not offer any evidence. *Id.* at 77.

4

After hearing this testimony, the judge found "the testimony of the defendant and his high priced legal counsel to be incredible" and concluded specifically that Mr. Rush "full well knew what the word concurrent meant" and that his testimony "collides with reality." *Id.* at 84-85. In a subsequent written opinion, the trial court found that "the representations made by the defendant and his then counsel were unworthy of belief" and that they "attempted to refute the clear, plain, and unequivocal language of the written agreement" in a manner that "simply and totally contradicted the record of the plea and sentencing hearings." Court of Common Pleas Opinion, Docket #5, Tab F at 14. The judge also recounted Smalis's long experience with the criminal justice system to conclude that Smalis "is not some poor witless fool stumbling unaccustomed through the stupefying majesty of a complex legal system" but rather is "a sly and slick manipulator whose principal goal in life is pursuing inordinate greed while escaping criminal responsibility." *Id.* at 16.

On appeal, the Commonwealth Court of Pennsylvania granted Smalis relief, finding the plea colloquy defective under *Commonwealth v. Persigner*, 615 A.2d 1305 (Pa. 1992), because the trial court "did not inform Smalis that consecutive sentences could be imposed such that his state sentences would run consecutive to one another but concurrent with the federal sentence." Magistrate Rep., App. at 11. The Supreme Court of Pennsylvania reversed in a three-sentence order:

> [T]he Commonwealth's petition is GRANTED. Upon review of the record, we conclude there was no violation of *Commonwealth v. Persigner*, 615

5

> A.2d 1305 (Pa. 1992). Accordingly, the order of the Commonwealth Court
> is reversed, and the judgment of sentence is reinstated.

Supreme Court Order, Docket #5, Tab. L.

Smalis sought habeas relief from his sentence in the U.S. District Court for the Western District of Pennsylvania, which adopted a magistrate's report and recommendation to deny relief. The report recognized that "it may fairly be said that a different jurist may have found that Smalis and his counsel were legitimately confused concerning the meaning of the plea agreement," but that "[t]his court is in no position to alter the state court's findings concerning credibility." Magistrate Rep., App at A-20.

Because the District Court adopted the Magistrate's report without an evidentiary hearing, our review of that decision is plenary. *Lambert v. Blackwell*, 387 F.3d 210, 231 (3d Cir. 2004). Because the Pennsylvania appellate courts resolved this case without directly considering Smalis's Sixth Amendment claims, we will review the trial court opinion as the last "reasoned state judgment" rejecting the federal claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Under the statutory standards governing the granting of habeas relief, a state court's factual findings must be rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and a petitioner's detention must be found to be a result of "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2).

Smalis argues that counsel's deficient advice concerning the meaning of the word "concurrent" caused him to plead as he did. This argument rests on factual premises that he did, in fact, receive inaccurate advice and that he did, in fact, misunderstand the

6

meaning of the word "concurrent." The trial court refused to accept these factual premises, rejecting Smalis's account based on the court's assessment of the credibility of the evidence presented. The critical question for this Court is whether we can disturb that conclusion.

Under 28 U.S.C. § 2254(e)(1), a state court's determination of fact "shall be presumed to be correct" and a habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." This deference, however, is not limitless:

> Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and . . . that the factual premise was incorrect by clear and convincing evidence [under § 2254(e)(1)].

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The meaning of the word "concurrent" is not debatable or malleable. "Concurrent" does not mean "coextensive," and its plain meaning cannot simply be defined away.[1] The likelihood of a former Assistant United States Attorney and a partner

---

[1] *See Black's Law Dictionary* 291 (6th ed. 1990) (defining "concurrent" to mean "running together"); *id.* (defining "concurrent sentences" to mean "two or more terms of imprisonment, all or part of each term of which is served simultaneously"); *The American Heritage Dictionary of the English Language* 392 (3d ed. 1992) (defining "concurrent" as "happening at the same time as something else"); 1 *The Compact Edition of the Oxford English Dictionary: Complete Text Reproduced Micrographically* 505 (25th ed. 1986) (defining "concurrent" as "running together in space, as parallel lines; going on side by side, as proceedings; occurring together, as events or circumstances; existing or arising together"); *The Random House Dictionary of the English Language* 425 (2d ed. 1987)

7

in a law firm who specializes in "white collar" criminal practice either not reading the plea agreement or not understanding the term "concurrent" in the context of entering a client's plea is sufficiently remote to justify the trial court in rejecting those hypotheses. There is additional record support, however, for the conclusion that Smalis and counsel were, if you will, playing dumb about the word "concurrent." Rush's post-sentencing testimony, Smalis's criminal history, and certain conduct at the sentencing hearing all provide support for that conclusion. Tice's testimony does not require a contrary conclusion.

It is difficult to believe that Rush failed to understand what "concurrent sentences" were when the plea was entered. But while his *pre-sentence* confusion about the meaning of "concurrent" is difficult to understand, his *post-sentence* confusion is even more baffling. According to everyone's version on the facts in this case, the purported confusion regarding "concurrent" was revealed to all on September 5, 2000, when the sentence of 10-20 years was imposed. Assuming that Rush had truly understood "concurrent" to mean "not in excess of" prior to that point in time, one would have expected that he would have consulted a dictionary and confessed, at the very least, to misleading his client. Instead, he continued to insist at the post-sentencing hearing that the plea agreement foreclosed a state sentence in excess of the federal one. This was less

---

(defining "concurrent" as "occurring or existing simultaneously or side by side"); *Webster's Third New International Dictionary of the English Language Unabridged* 472 (1971) (defining "concurrent" as "occurring, arising, or operating at the same time").

consistent with Smalis and his counsel's having made a good faith mistake than with the stratagem which the court apparently found to have existed – an agreement, after they were unable to secure a "coextensive" plea agreement, to pretend to see what they wanted to see in "concurrent," thereby providing a possible way out in the event the state sentence exceeded the federal one.

Only some of Smalis's experience with the criminal justice system is relevant to evaluate his understanding of the word "concurrent." The trial court noted that Smalis had negotiated and entered plea agreements and served a prison sentence. In addition, the Presentence Report indicates that Ernest Smalis had received both "concurrent" and "consecutive" sentences in the past. *See* Presentence Report, Docket #5, Tab C at 8–9 (noting that he received two years of probation for two counts of homicide that ran "concurrent" and two sentences of seven years of probation to run "consecutive to each other and the sentence" of two to six years in prison). While Smalis had not faced the precise scenario of "concurrent" prosecutions by the federal and state governments, the trial court was entitled to infer that it was unlikely that this was the first time that Smalis had been exposed to the word "concurrent."

Finally, certain conduct by Smalis and counsel at the sentencing hearing seemed consistent with the recognition that the trial court was not bound to impose a sentence that would be coextensive with the federal sentence. Smalis and Rush acknowledged that sentencing was within the court's discretion, consented to the ordering of a Presentence

9

Report, argued for the minimum sentence, and offered evidence of Smalis's cooperation with federal authorities. In pointing this out with regard to the ordering of the Presentence Report, the trial court reasoned that "[h]ad the plea agreement bound the court to the exact same punishment imposed upon him by his federal sentence, no Presentence Report would have been necessary." Trial Court Opinion, Docket #5, Tab F, at 15. Even if Smalis and his counsel thought that the court retained discretion to sentence him to *less than* the federal sentence, all of this conduct would still seem to be superfluous if they understood that the plea bargain guaranteed that his sentence for state crimes would be subsumed by the federal sentence Smalis was already required to serve.

The strongest evidence for Smalis, the testimony of the FBI agent, did not compel a conclusion contrary to that of the trial court. Smalis points out that Tice is an "FBI agent with no conceivable motive to lie." Br. Appellant at 20 n.2. In addition to his lack of bias and credentials as an officer of the law, Tice testified to conversations with Smalis *before* the sentence was handed down. Hearing Transcript, Docket #5, Tab E, at 73. Tice, however, only testified as to what Smalis told him. If the trial court correctly concluded that Smalis was fabricating his misunderstanding about the word "concurrent," there was no reason for Smalis to only begin to play dumb *after* he was sentenced. If Smalis was lying to Tice, then Tice did not independently bolster his case by merely repeating those statements to the court.

It is, of course, possible that Smalis and his counsel were genuinely confused as to

the meaning of the word "concurrent." But our charge under 28 U.S.C. §§ 2254(d)(2) and 2254 (e)(1) is not to determine whether the petitioner has advanced a plausible alternative to the factual findings of the state court. Here, the trial court concluded that Smalis and his counsel wanted and hoped to secure a "coextensive" plea agreement and that, when they could not, agreed to see what they wanted to see in the term "concurrent" and to pretend that it guaranteed what they wanted it to guarantee. Because we find record support for the trial court's factual findings, we cannot overturn them.

The state court's rejection of Smalis's ineffective representation of counsel is thus not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). *See Miller-El*, 537 U.S. at 340.

Judge Smith concurs in the judgment of the court. Accordingly, the judgment of the District Court will be affirmed.

11